## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

LESLIE KING II
and BUSIC ENTERTAINMENT, LLC,

             Plaintiffs,

v.

MICHAEL CHAFFIN and
THREE COMMAS, LLC,

             Defendants.

**Case No.  3:24-cv-00719**

## COMPLAINT
(Jury Trial Demanded)

Plaintiffs Leslie King II and BUSIC Entertainment, LLC, complaining of Defendants

Michael Chaffin and Three Commas, LLC, allege and state as follows:

### PARTIES AND JURISDICTION

1.     Plaintiff Leslie King II ("**King**") is a natural person who resides in Mecklenburg
County, North Carolina.

2.     Plaintiff BUSIC Entertainment, LLC ("**BUSIC Entertainment**") is a North
Carolina limited liability company registered to conduct business in the state of North Carolina,
with its principal place of business located in Charlotte, North Carolina.  All of BUSIC
Entertainment's members are citizens of the State of North Carolina.

3.     Defendant Michael Chaffin ("**Chaffin**") is a natural person who, upon
information and belief, is a citizen of the State of Texas.

4.     Defendant Three Commas, LLC ("**Three Commas**") is a Delaware limited
liability company with its principal place of business in Texas.  Upon information and belief,
none of its members are citizens of the State of North Carolina.

1

5.      Three Commas engages in business management consulting and the manufacturing and distribution of athletic apparel.   Defendant Chaffin is an owner of Three Commas and is one of its agents.

6.      All of the actions taken by Chaffin as alleged herein were made in his official capacity as an agent of Three Commas.

## JURISDICTION & VENUE

7.      This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1332(a)(1).

8.      Complete diversity of citizenship exists between the Plaintiffs and the Defendants, and the amount in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

9.      Venue is proper in this judicial district and in this division pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events at issue in this lawsuit took place in Mecklenburg County, North Carolina.

## FACTS COMMON TO ALL COUNTS

10.      King established BUSIC Entertainment in 2002.  BUSIC Entertainment provides comprehensive consulting services to the music entertainment industry.

11.      BUSIC Entertainment's services include artist management, strategic marketing, securing performance bookings, and orchestrating promotional campaigns.

12.      King has been the President of BUSIC Entertainment since its formation.

13.      By leveraging long-established industry connections for over 20 years, King has collaborated closely with music artists to develop their careers, negotiate favorable contracts, and secure lucrative performances and tours.

2

*Chaffin Resents King for Not Including Him in a Business Proposal.*

14.     In the early 2000s, the rapper Cornell Haynes, Jr. (who is professionally known as "**Nelly**") was managed by Tony Davis. Tony Davis developed a professional and personal relationship with Leslie King that they continue to maintain.

15.     In or around 2002, Nelly and his company, Nelly, Inc., hired King to solicit and secure endorsement deals and sponsorship opportunities.

16.     Over the years King's career progressed and he achieved success in the music industry. As a result, King and BUSIC Entertainment began providing Nelly and Nelly, Inc. with a full range of music industry services, including the securing of touring performances and overseeing the promotion and marketing of Nelly as an entertainer and businessman.

17.     Around the same time that Nelly hired King, he retained Michael Chaffin as his business manager to handle the financial aspects of his career, including budgeting and tax planning. Upon information and belief, Chaffin provides these services in part through Three Commas.

18.     In or around 2002, Davis and King decided to work together and form a business partnership. Their goal was to become better at what they did together in order to be able to facilitate greater earnings, greater opportunities, and a more productive and beneficial situation for Nelly.

19.     Davis and King's proposal was to merge their respective companies and divide the responsibilities between them. Under this new arrangement, King would serve as the agent and the attorney for the client, while Davis would manage the music business and movie and television opportunities.

3

20.     Davis and King presented their proposal to Chaffin in Chaffin's capacity as Nelly's business manager.  In this meeting, Davis and King presented this proposal to Chaffin with the expectation that Chaffin would approve the plan and recommend that Nelly agree to it.

21.     Instead of presenting the proposal to Nelly, however, upon information and belief, Chaffin was upset that Davis and King had not included him in the business plan and had not invited him to join the new entity.  As a result, the meeting did not result in the formation of a new business and, ever since that meeting, Chaffin has resented King.

22.     Since that 2002 meeting took place, Chaffin has harbored feelings of animosity toward King, and he has worked to undermine King and BUSIC Entertainment's business as a result.

23.     Since that meeting took place, Chaffin has been jealous of King and has upon information and belief implemented a scheme to remove King from business deals and to interfere with the business and personal relationship between King and Nelly.

***In 2016, Nelly Hired J. Erving as an Additional Business Manager.***

24.     In or around 2016, Nelly, Inc. retained Julius Erving, III ("**Erving**") as a general manager to also oversee and guide Nelly's career.

25.     Over time, disputes began to arise between Erving and King concerning the management of Nelly's touring business.

26.     Chaffin utilized these disputes in order to discredit King, elevate Erving, and remove King from the day-to-day operation of Nelly's business.

4

*In October 2019, Nelly Called a Meeting to Discuss Management of Nelly's Touring Business.*

27.     In October 2019, and upon information and belief at Chaffin's direction, Nelly organized a meeting of his entire management team in Las Vegas, Nevada to discuss the reorganization of his business affairs.

28.     One issue that Nelly told the group that he wanted to address was the apparent power struggle between King and Erving over who controlled Nelly's touring business.

29.     Prior to the meeting and upon information and belief, Chaffin met separately with Erving to coordinate a joint strategy for the meeting.

30.     Upon information and belief, Chaffin then used the October 2019 meeting to promote Erving at the expense of King because Chaffin wanted Erving to invest in Three Commas as well as to help him find investors for Three Commas, including the businessman, Troy Carter (who among other things, earlier in his career was Lady Gaga's manager and the President of Spotify).

31.     During the meeting, Chaffin stated that Erving brought in more revenue for Nelly and Nelly, Inc. than King did—even though that statement was demonstrably untrue.

32.     At the time of the meeting, King was generating approximately $4 million per year in revenue for Nelly in contrast to Erving, who was generating approximately $2 million in touring revenue for Nelly.

33.     Prior to the October 2019 meeting in Las Vegas, King and BUSIC Entertainment were earning a 15% commission for the work that they performed for Nelly and Nelly, Inc.

34.     During the October 2019 meeting, Chaffin presented a proposal to King. The proposal was not a legitimate proposal, however. The financial implications of the proposal would have been disastrous for King. Under Chaffin's proposal, King would have been

5

responsible for drafting and negotiating all live performance contracts for Nelly and Nelly, Inc., but his commission would decrease from 15% to 5% while Erving's commission would remain at 15%.

35.     Chaffin's proposal would have resulted in a total reduction of 50% of King's income.  Additionally, if a deal was for $200,000, King would have received $10,000 while Erving – who played no role in securing the deal – would receive $30,000.  Nonetheless, Chaffin presented the proposal as a "great opportunity" for King.

***Chaffin Told Taj McDade That He Was Unhappy with His Financial Circumstances.***

36.     In November 2022, Chaffin had a meeting with Taj McDade, one of Nelly's employees, in which Chaffin complained to McDade about feeling unsuccessful in comparison to his friends.

37.     Chaffin told McDade that he was planning to terminate his business relationship with Nelly by the end of 2023 unless Chaffin could find a way to earn more money from working for Nelly.

38.     When McDade asked Chaffin why Chaffin had so much animosity toward King, Chaffin said that in 2002 King had had an idea for a new management company but had not included Chaffin as a partner.

***Chaffin Also Became Angry Because He Was Unable to Obtain Perks from King.***

39.     In December 2022 and in connection with a performance by Nelly, Chaffin requested that King arrange for a free hotel room in Tampa, Florida on New Year's Eve for Chaffin's girlfriend, Chaffin, and Chaffin's girlfriend's son.

40.     King worked with the hotel to try to procure the free room, but the hotel was only able to offer Chaffin a room at a discounted price.  When Chaffin learned that a free hotel room would not be made available, he became angry toward King.

41.     At around that same time in December 2022, Chaffin requested that King arrange for Chaffin to have a free room at the Versace Hotel in Australia's Gold Coast in connection with Nelly's Australia and New Zealand tour.

42.     King notified Chaffin that he would work on securing the room at the hotel in Australia, but that the costs associated with the room would be Nelly's financial responsibility.

43.     At the same time, Chaffin became angry because he felt that he had been responsible for securing a private event for Nelly in Las Vegas.  Chaffin provided that information to another Nelly, Inc. employee, McDade, who followed the company's protocol and sent the offer to King.  The 25% commission that was payable to Erving and King was approximately $28,000.

44.     Upon information and belief, Chaffin was furious that he could not afford to travel to Australia and that King had been paid $14,000 for a deal that Chaffin claimed that he negotiated and for which Chaffin did not receive a commission.

45.     Upon information and belief, this series of events led Chaffin to conclude that he could do and have King's job.  As a result of this and Chaffin's belief that he lacked access to events, Chaffin decided that Nelly, Inc. would utilize a touring software program called Gigwell that would allow Chaffin to put names on the guest list without the need to obtain prior approval from any other member of the team.

7

46.     Chaffin then used Gigwell to help facilitate the removal of King. Upon information and belief, since King's termination, Chaffin has received an increase in compensation and a modified pay structure.

47.     As a result of Chaffin's anger toward King and resentment due to Chaffin's financial circumstances, Chaffin requested that King send Chaffin all of the contracts from Australia and New Zealand on the ground that Nelly's accountants needed that information.

48.     Chaffin's request for the information was not legitimate, however. Upon information and belief, Chaffin requested the contracts in order to investigate how many plane tickets and hotel rooms were a part of the arrangements.

***Chaffin Has Repeatedly Defamed King In Order to Gain Economic Advantage and Control More of Nelly's Business.***

49.     Throughout nearly the entire course of the relationship between King and Chaffin, Chaffin has made false and defamatory statements concerning King and BUSIC Entertainment to numerous third parties.

50.     Chaffin has used these multiple schemes and defamatory statements to drive a wedge between King, BUSIC Entertainment, and Nelly and Nelly, Inc.

51.     For example, upon information and belief in or around June or July 2023, Chaffin told Nelly that King had been telling Chaffin and others that for Nelly and Nelly, Inc.'s business, it was King who "kept the lights on." This statement was designed to and did achieve the intended goal of making Nelly feel like King thought he was more important than Nelly and that Nelly could not survive without King and King's financing. King never made any such comment.

52.     On multiple occasions, Chaffin also falsely stated that King charged Nelly more in commissions than Erving did.

8

53.     Upon information and belief, in or around November 2017, Chaffin also publicly stated that he had secured a Ford endorsement deal (which had in fact been secured for Nelly by King).

***Chaffin Falsely Stated That King Overcharged Nelly for Commissions.***

54.     In 2020, Nelly's income from performing for audiences at music venues decreased dramatically due to the coronavirus pandemic.

55.     In 2021, Nelly and Nelly, Inc. agreed that: (a) commissions tied to Nelly's performances would increase 22.5% to 25%, (b) that King and Erving's commissions would decrease from 15% to 12.5%, and (c) that King would pay Erving's commission directly to Erving as a courtesy to Erving because Erving preferred that his compensation not be routed through Nelly, Inc. due to Nelly, Inc.'s failure to pay him in the past. Thus, King agreed to pay Erving as a courtesy to Nelly, Inc.

56.     Since August 2023, however, Chaffin has falsely stated to third parties on many occasions that King retained 25% or more on commissions generated from performances secured for Nelly that King kept for himself.

57.     Since August 2023, Chaffin has falsely stated to third parties that King overcharged Nelly and/or Nelly, Inc. for commissions, including charging Nelly a 25% commission solely for King and another 7.5% to 10% commission that was paid to Reliant.

58.     Chaffin knew or could have known with the exercise of any due diligence that Nelly, Nelly, Inc., Erving, and King had an agreement that King and Erving would split the 25% commission equally between them. Chaffin would only have needed to ask Erving, King, or Nelly.

9

59.     In December 2023, Chaffin was the recipient of e-mails between King and Hannah Wilson-Frey, who is Erving's business manager. In those e-mail communications, Wilson-Frey requested that King provide an accounting of the wire payments that King had sent to Erving.

60.     Even though Chaffin was a recipient of those e-mails, he still refused to acknowledge to any third parties that King had in fact paid Erving.

61.     In one of Chaffin's final e-mail messages to King, Chaffin inadvertently acknowledged that King had been paying Erving. He did so by acknowledging that Wilson-Frey was finding it difficult reconciling the payments with Erving's business records.

62.     Had Chaffin simply asked Erving whether Erving's commission was 12.5% and whether King had paid that commission to him, he would have learned the truth and the falsity of his statements.

63.     Since August 2023, Chaffin has falsely stated to third parties that no one who worked for Nelly or Nelly, Inc. knew that a talent agency earned a commission on touring business involving Nelly.

64.     Chaffin knew or could have known with the exercise of any due diligence that the Reliant Talent Agency ("**Reliant**") and any agency brought in to assist prior to Reliant earned a 10% commission on touring business involving Nelly.

65.     The compensation received by Reliant is a provision of contracts involving touring performances by Nelly. The breakdown was included in every deal memo and various employees of Nelly, Inc. received those memos.

66.     Moreover, on many of the contracts that were Chaffin's responsibility to review, the fact that the applicable agency earned a 10% commission is set forth on the face of the contract.

67.     Chaffin's conduct demonstrated a reckless disregard for the truth.

***Chaffin Falsely Stated That King Manipulated Touring Contracts and Touring Dates.***

68.     Since August 2023, Chaffin has falsely stated to third parties on more than one occasion that King manipulated contracts with Reliant for performances secured for Nelly by replacing Reliant's name with BUSIC Entertainment's name in an attempt to hide the true amount of Plaintiffs' compensation from Nelly and Nelly, Inc.  Chaffin thus implied that Plaintiffs were stealing from Nelly and Nelly, Inc.

69.     In an April 24, 2024 e-mail message, for example, Chaffin wrote that "[King] took a contract from Reliant, put [his] name on it after they took out their commission, so [Nelly, Inc.] never knew original show amount and got paid a lot of money for a long time processing paper."  A true and correct copy of the April 24, 2024, e-mail message is attached as Exhibit "**A**" hereto.  Chaffin copied a previous email from King and wrote his own answers into the text below each question.

70.     In 2023, Reliant submitted a list of the contracts that King and BUSIC Entertainment negotiated for Nelly to Nelly, Inc. and the dates and prices set forth in those contracts were identical to the dates and prices submitted by King.

71.     Since August 2023, Chaffin has falsely stated to third parties that King placed performance dates on Nelly's touring calendar without the approval of Nelly or Nelly, Inc.

11

72.     Since August 2023, Chaffin has falsely stated to third parties that King placed unapproved dates on Nelly's performance calendar when in fact it was Erving – Nelly's Head of Touring – who approved them and/or double-booked Nelly.

73.     As a result of the false statements made by Chaffin to Nelly and to others and despite King's track record of success in securing performances and generating substantial revenue for Nelly, Nelly terminated business arrangements that were mutually beneficial to King, BUSIC Entertainment, Nelly, and Nelly, Inc.  In addition, these statements have been harmful to King and to BUSIC Entertainment's reputations in the music entertainment industry.

74.     In December 2023, Chaffin falsely stated that King manipulated a contract for Nelly to perform at the 2024 Bottlerock Festival in Napa Valley, California.

75.     The original offer for the Bottlerock Festival was for $175,000 in December 2023, but the festival organizer subsequently increased the offer to $200,000.  Chaffin, without evidence of manipulation of any kind, accused King of manipulating the contract.  King showed Chaffin, Erving, and Nelly through email messages irrefutable evidence of what happened with the Bottlerock Festival, and Taj McDade affirmed King's version of events.  Additionally, King could not have manipulated the contract in December of 2023 because the festival organizer did not sign the contract until April 25, 2024.

76.      Chaffin's false and misleading statements were designed to support a false impression that Plaintiffs stole money from Nelly and/or Nelly, Inc.

***Chaffin Interfered with BUSIC Entertainment's Contracts.***

77.     After the contract for the Bottlerock Festival was executed, Chaffin upon information and belief contacted the festival organizers without King's knowledge or consent

12

and told them to direct payment to another entity – not BUSIC Entertainment as stated in the contract. BUSIC Entertainment has still not received the proceeds from the Bottlerock Festival.

78.     Upon information and belief, Chaffin also manipulated a series of contracts between Reliant and BUSIC Entertainment by replacing the name of BUSIC Entertainment with other entities. While doing so, Chaffin falsely stated to Heath Baumhor of Reliant that Nelly, Inc. would pay BUSIC Entertainment directly. BUSIC Entertainment has still not received these proceeds.

79.     After a successful twenty-three year professional and personal relationship, King and Nelly no longer speak and King no longer represents Nelly in any capacity. Chaffin severed the relationship between the two.

## FIRST CLAIM FOR RELIEF
### (Defamation *Per Se* – Against All Defendants)

80.     Plaintiffs re-allege and incorporate Paragraphs 1 through 79 above as if fully set forth herein.

81.     Defendants made the foregoing series of written and oral statements regarding Plaintiffs.

82.     The statements were false.

83.     The statements were defamatory.

84.     The statements constituted defamation *per se* because they impeached Plaintiffs in their trade and profession and otherwise subjected them to ridicule, contempt, and disgrace.

85.     The statements were of and concerning Plaintiffs.

86.     The statements were published to third persons.

87.     The statements caused injury to Plaintiffs.

13

88.     Upon information and belief, Defendants published the statements with knowledge of their falsity, or with reckless disregard of the truth of the statements.

89.     Defendants published the statements intentionally, maliciously, and willfully.

90.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained, and continue to sustain, losses, and are entitled to recover damages exceeding $75,000 in an exact amount to be proven at trial.

### SECOND CLAIM FOR RELIEF
**(Violation of the North Carolina Unfair and Deceptive Trade Practices Act**
**N.C. Gen. Stat. § 75-1.1 – Against All Defendants)**

91.     Plaintiffs re-allege and incorporate Paragraphs 1 through 90 above as if fully set forth herein.

92.     Defendants willfully engaged in an unfair and deceptive trade practices by making false and defamatory statements concerning Plaintiffs to third parties.

93.     Defendants' conduct was in or affecting commerce and constitutes unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1.

94.     Defendants' actions were accomplished by aggravating or outrageous conduct, including fraud and the reckless disregard for the truth.

95.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained, and continue to sustain, losses, and are entitled to recover damages exceeding $75,000 in an exact amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
**(Tortious Interference with Contract/Nelly and Nelly, Inc. Contract – Against Defendants)**

96.     Plaintiffs re-allege and incorporate Paragraphs 1 through 95 above as if fully set forth herein.

14

97.     As set forth herein, Plaintiffs entered into valid and binding contracts with Nelly and Nelly, Inc., including valid and binding agreements relating to Plaintiffs' compensation for performances secured for Nelly and the sale of merchandise related to Nelly's persona.

98.     Defendants knew of these contractual relationships.

99.     Defendants, for their own benefit intentionally, maliciously, and without any privilege to do so, induced Nelly and Nelly, Inc. to breach the agreements.

100.    Defendants exceeded the bounds of lawful competition and have wrongfully, and without justification, tortiously interfered with Plaintiffs' contractual relationships with Nelly and Nelly, Inc.

101.    Defendants' actions were without justification.

102.    Defendants' interference was conducted through improper means.

103.    As a direct and proximate result of Defendants' actions, Plaintiffs have sustained, and continue to sustain, losses, and are entitled to recover damages exceeding $75,000 in an exact amount to be proven at trial.

<u>**FOURTH CLAIM FOR RELIEF**</u>
**(Tortious Interference with Contract/Reliant Talent Agency Contracts – BUSIC Entertainment Against the Defendants)**

104.    Plaintiffs re-allege and incorporate Paragraphs 1 through 103 above as if fully set forth herein.

105.    As set forth herein, BUSIC Entertainment entered into valid and binding contracts with Reliant including valid and binding agreements relating to BUSIC Entertainment's compensation for performances secured for Nelly.

106.    Defendants knew of these contractual relationships.

15

107.    Defendants, for their own benefit intentionally, maliciously, and without any privilege to do so, induced Nelly and Nelly, Inc. to breach the agreements between BUSIC Entertainment and Reliant.

108.    Defendants exceeded the bounds of lawful competition and have wrongfully, and without justification, tortiously interfered with BUSIC Entertainment's contractual relationships with Reliant.

109.    Defendants' actions were without justification.

110.    Defendants' interference was conducted through improper means.

111.    As a direct and proximate result of Defendants' actions, BUSIC Entertainment has sustained, and continue to sustain, losses, and is entitled to recover damages exceeding $75,000 in an exact amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (Tortious Interference with Contract/Shorty Gras Festival Contract – BUSIC Entertainment Against the Defendants)

112.    Plaintiffs re-allege and incorporate Paragraphs 1 through 111 above as if fully set forth herein.

113.    As set forth herein, BUSIC Entertainment entered into a valid and binding contract with Reliant and the organizers of the Shorty Gras Festival relating to a February 3, 2024 performance by Nelly in New Orleans, Louisiana.

114.    Defendants knew of this contractual relationship.

115.    Defendants, for their own benefit intentionally, maliciously, and without any privilege to do so, induced Reliant to breach the agreement.

116.    Defendants exceeded the bounds of lawful competition and have wrongfully, and without justification, tortiously interfered with BUSIC Entertainment's contractual relationship with Reliant in connection with the Shorty Gras Festival.

16

117.    Defendants' actions were without justification.

118.    Defendants' interference was conducted through improper means.

119.    As a direct and proximate result of Defendants' actions, BUSIC Entertainment has sustained, and continue to sustain, losses and is entitled to recover damages in an exact amount to be proven at trial.

**SIXTH CLAIM FOR RELIEF**
**(Tortious Interference with Contract/Rock the Country Festival Contract**
**– BUSIC Entertainment Against the Defendants)**

120.    Plaintiffs re-allege and incorporate Paragraphs 1 through 119 above as if fully set forth herein.

121.    As set forth herein, BUSIC Entertainment entered into a valid and binding contract with Reliant and the organizers of the Rock the Country Festival relating to an April 20, 2024 performance by Nelly in Ashland, Kentucky.

122.    Defendants knew of this contractual relationship.

123.    Defendants, for their own benefit intentionally, maliciously, and without any privilege to do so, induced Reliant to breach the agreement.

124.    Defendants exceeded the bounds of lawful competition and have wrongfully, and without justification, tortiously interfered with BUSIC Entertainment's contractual relationship with Reliant in connection with the Rock the Country Festival.

125.    Defendants' actions were without justification.

126.    Defendants' interference was conducted through improper means.

127.    As a direct and proximate result of Defendants' actions, BUSIC Entertainment has sustained, and continues to sustain, losses, and it is entitled to recover damages in an exact amount to be proven at trial.

17

## SEVENTH CLAIM FOR RELIEF
### (Tortious Interference with Contract/SunFest Festival Contract
### – BUSIC Entertainment Against the Defendants)

128.     Plaintiffs re-allege and incorporate Paragraphs 1 through 127 above as if fully set forth herein.

129.     As set forth herein, BUSIC Entertainment entered into a valid and binding contract with Reliant and the organizers of SunFest relating to a May 3, 2024 performance by Nelly in Palm Beach, Florida.

130.     Defendants knew of this contractual relationship.

131.     Defendants, for their own benefit intentionally, maliciously, and without any privilege to do so, induced Reliant to breach the agreement.

132.     Defendants exceeded the bounds of lawful competition and have wrongfully, and without justification, tortiously interfered with BUSIC Entertainment's contractual relationship with Reliant in connection with the SunFest Festival.

133.     Defendants' actions were without justification.

134.     Defendants' interference was conducted through improper means.

135.     As a direct and proximate result of Defendants' actions, BUSIC Entertainment has sustained, and continues to sustain, losses, and it is entitled to recover damages in an exact amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF
### (Tortious Interference with Contract/Los Angeles County Fair Contract
### – BUSIC Entertainment Against the Defendants)

136.     Plaintiffs re-allege and incorporate Paragraphs 1 through 135 above as if fully set forth herein.

18

137.     As set forth herein, BUSIC Entertainment entered into a valid and binding contract with Reliant and the organizers of the Los Angeles County Fair relating to a May 10, 2024 performance by Nelly in Pomona, California.

138.     Defendants knew of this contractual relationship.

139.     Defendants, for their own benefit intentionally, maliciously, and without any privilege to do so, induced Reliant to breach the agreement.

140.     Defendants exceeded the bounds of lawful competition and have wrongfully, and without justification, tortiously interfered with BUSIC Entertainment's contractual relationship with Reliant in connection with the Los Angeles County Fair performance.

141.     Defendants' actions were without justification.

142.     Defendants' interference was conducted through improper means.

143.     As a direct and proximate result of Defendants' actions, BUSIC Entertainment has sustained, and continues to sustain, losses, and it is entitled to recover damages in an exact amount to be proven at trial.

### NINTH CLAIM FOR RELIEF
**(Tortious Interference with Contract/Los Angeles County Fair Contract – BUSIC Entertainment Against the Defendants)**

144.     Plaintiffs re-allege and incorporate Paragraphs 1 through 143 above as if fully set forth herein.

145.     As set forth herein, BUSIC Entertainment entered into a valid and binding contract with Reliant and the organizers of the Bay City Country Music Festival relating to a June 21, 2024 performance by Nelly in Bay City, Michigan.

146.     Defendants knew of this contractual relationship.

147.     Defendants, for their own benefit intentionally, maliciously, and without any privilege to do so, induced Reliant to breach the agreement.

19

148.     Defendants exceeded the bounds of lawful competition and have wrongfully, and without justification, tortiously interfered with BUSIC Entertainment's contractual relationship with Reliant in connection with the Bay City Country Music Festival performance.

149.     Defendants' actions were without justification.

150.     Defendants' interference was conducted through improper means.

151.     As a direct and proximate result of Defendants' actions, BUSIC Entertainment has sustained, and continues to sustain, losses, and it is entitled to recover damages in an exact amount to be proven at trial.

### TENTH CLAIM FOR RELIEF
**(Tortious Interference with Contract/Country Boom Festival
– BUSIC Entertainment Against the Defendants)**

152.     Plaintiffs re-allege and incorporate Paragraphs 1 through 151 above as if fully set forth herein.

153.     As set forth herein, BUSIC Entertainment entered into a valid and binding contract with Reliant and the organizers of the Country Boom Festival relating to a July 11, 2024 performance by Nelly in West Salem, Wisconsin.

154.     Defendants knew of this contractual relationship.

155.     Defendants, for their own benefit intentionally, maliciously, and without any privilege to do so, induced Reliant to breach the agreement.

156.     Defendants exceeded the bounds of lawful competition and have wrongfully, and without justification, tortiously interfered with BUSIC Entertainment's contractual relationship with Reliant in connection with the Country Boom Festival performance.

157.     Defendants' actions were without justification.

158.     Defendants' interference was conducted through improper means.

159.     As a direct and proximate result of Defendants' actions, BUSIC Entertainment has sustained, and continues to sustain, losses, and it is entitled to recover damages in an exact amount to be proven at trial.

## ELEVENTH CLAIM FOR RELIEF
### (Tortious Interference with Contract/Porter County Fair
– BUSIC Entertainment Against the Defendants)

160.     Plaintiffs re-allege and incorporate Paragraphs 1 through 159 above as if fully set forth herein.

161.     As set forth herein, BUSIC Entertainment entered into a valid and binding contract with Reliant and the organizers of the Porter County Fair relating to a July 18, 2024 performance by Nelly in Valparaiso, Indiana.

162.     Defendants knew of this contractual relationship.

163.     Defendants, for their own benefit intentionally, maliciously, and without any privilege to do so, induced Reliant to breach the agreement.

164.     Defendants exceeded the bounds of lawful competition and have wrongfully, and without justification, tortiously interfered with BUSIC Entertainment's contractual relationship with Reliant in connection with the Porter County Fair performance.

165.     Defendants' actions were without justification.

166.     Defendants' interference was conducted through improper means.

167.     As a direct and proximate result of Defendants' actions, BUSIC Entertainment has sustained, and continues to sustain, losses, and it is entitled to recover damages in an exact amount to be proven at trial.

## TWELFTH CLAIM FOR RELIEF
### (Tortious Interference with Contract/Greeley Independence Stampede Festival
### – BUSIC Entertainment Against the Defendants)

168.    Plaintiffs re-allege and incorporate Paragraphs 1 through 167 above as if fully set forth herein.

169.    As set forth herein, BUSIC Entertainment entered into a valid and binding contract with Reliant and the organizers of the Greeley Independence Stamped Festival relating to a June 28, 2024 performance by Nelly in Greeley, Colorado.

170.    Defendants knew of this contractual relationship.

171.    Defendants, for their own benefit intentionally, maliciously, and without any privilege to do so, induced Reliant to breach the agreement in favor of a competing performance by Nelly on the same date for the 2024 Janet Jackson Tour.

172.    Defendants exceeded the bounds of lawful competition and have wrongfully, and without justification, tortiously interfered with BUSIC Entertainment's contractual relationship with Reliant in connection with the Greeley Independence Stampede Festival performance.

173.    Defendants' actions were without justification.

174.    Defendants' interference was conducted through improper means.

175.    As a direct and proximate result of Defendants' actions, BUSIC Entertainment has sustained, and continues to sustain, losses, and it is entitled to recover damages in an exact amount to be proven at trial.

## THIRTEENTH CLAIM FOR RELIEF
### (Tortious Interference with Contract/Pendleton Whiskey Music Festival
### – BUSIC Entertainment Against the Defendants)

176.    Plaintiffs re-allege and incorporate Paragraphs 1 through 175 above as if fully set forth herein.

22

177. As set forth herein, BUSIC Entertainment entered into a valid and binding contract with Reliant and the organizers of the Pendleton Whiskey Music Festival relating to a July 13, 2024 performance by Nelly in Pendleton, Oregon.

178. Defendants knew of this contractual relationship.

179. Defendants, for their own benefit intentionally, maliciously, and without any privilege to do so, induced Reliant to breach the agreement in favor of a competing performance by Nelly on the same date for the 2024 Janet Jackson Tour.

180. Defendants exceeded the bounds of lawful competition and have wrongfully, and without justification, tortiously interfered with BUSIC Entertainment's contractual relationship with Reliant in connection with the Pendleton Whiskey Music Festival performance.

181. Defendants' actions were without justification.

182. Defendants' interference was conducted through improper means.

183. As a direct and proximate result of Defendants' actions, BUSIC Entertainment has sustained, and continues to sustain, losses and is entitled to recover damages in an exact amount to be proven at trial.

### FOURTEENTH CLAIM FOR RELIEF
### (Tortious Interference with Contract/Merchandise Contract
### – BUSIC Entertainment Against the Defendants)

184. Plaintiffs re-allege and incorporate Paragraphs 1 through 183 above as if fully set forth herein.

185. As set forth herein, in or around June or July of 2021, BUSIC Entertainment entered into a valid and binding contract with Ian Vaughn and Nelly, Inc. relating to the sale of merchandise at performances by Nelly.

186. Defendants knew of this contractual relationship.

23

187.    Defendants, for their own benefit intentionally, maliciously, and without any privilege to do so, induced Ian Vaughn and Nelly, Inc. to breach the agreement in or around October or November of 2021.

188.    Defendants exceeded the bounds of lawful competition and have wrongfully, and without justification, tortiously interfered with BUSIC Entertainment's contractual relationship with Ian Vaughn and Nelly, Inc. in connection with the sale of merchandise.

189.    Defendants' actions were without justification.

190.    Defendants' interference was conducted through improper means.

191.    As a direct and proximate result of Defendants' actions, BUSIC Entertainment has sustained, and continues to sustain, losses and is entitled to recover damages in an exact amount to be proven at trial.

## FIFTEENTH CLAIM FOR RELIEF
### (Tortious Interference with Contract/TAO Contract
### – BUSIC Entertainment Against the Defendants)

192.    Plaintiffs re-allege and incorporate Paragraphs 1 through 191 above as if fully set forth herein.

193.    As set forth herein, on September 26, 2023, BUSIC Entertainment entered into valid and binding contracts with five subsidiaries of TAO Group Operating LLC ("**TAO Group**") and Nelly relating to a series of performances by Nelly.

194.    Defendants knew of these contractual relationships.

195.    Defendants, for their own benefit intentionally, maliciously, and without any privilege to do so, induced Nelly to breach the agreements by not scheduling performances.

196.    Defendants exceeded the bounds of lawful competition and have wrongfully, and without justification, tortiously interfered with BUSIC Entertainment's contractual relationships with the TAO Group subsidiaries and Nelly in connection with the performances.

24

197.    Defendants' actions were without justification.

198.    Defendants' interference was conducted through improper means.

199.    As a direct and proximate result of Defendants' actions, BUSIC Entertainment has sustained, and continues to sustain, losses and is entitled to recover damages in an exact amount to be proven at trial.

## SIXTEENTH CLAIM FOR RELIEF
### (Conversion – BUSIC Entertainment Against the Defendants)

200.    Plaintiffs re-allege and incorporate Paragraphs 1 through 199 above as if fully set forth herein.

201.    As set forth herein, BUSIC Entertainment entered into a valid and binding contract with the organizers of the Bottlerock Music Festival relating to a May 24, 2024 performance by Nelly in Napa, California.

202.    BUSIC Entertainment was the lawful owner of the proceeds and had the right to immediate possession of them.

203.    Defendants wrongfully withheld possession, interfered, and/or exercised dominion over the proceeds.

204.    As a direct and proximate result of Defendants' actions, BUSIC Entertainment has sustained, and continues to sustain, losses and is entitled to recover damages in an exact amount to be proven at trial.

## SEVENTEENTH CLAIM FOR RELIEF
### (Violation of the North Carolina Unfair and Deceptive Trade Practices Act
### N.C. Gen. Stat. § 75-1.1 – Against All Defendants)

205.    Plaintiffs re-allege and incorporate Paragraphs 1 through 205 above as if fully set forth herein.

206.    Defendants willfully engaged in an unfair and deceptive trade practices by wrongfully withholding possession of the proceeds of the Bottlerock Music Festival contract.

25

207. Defendants' conduct was in or affecting commerce and constitutes unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1.

208. Defendants' actions were accomplished by aggravating or outrageous conduct, including fraud and the reckless disregard for the truth.

209. As a direct and proximate result of Defendants' actions, Plaintiffs have sustained, and continue to sustain, losses, and are entitled to recover damages in an exact amount to be proven at trial.

**EIGHTEENTH CLAIM FOR RELIEF**
**(Tortious Interference with Prospective Economic Advantage – Against All Defendants)**

210. Plaintiffs re-allege and incorporate Paragraphs 1 through 210 above as if fully set forth herein.

211. As set forth herein, Plaintiffs offer comprehensive consulting services in the music entertainment industry and have established significant business relationships within the industry.

212. Plaintiffs have developed longstanding and profitable relationships with various artists, record labels, venues, talent agencies including Reliant, as well as entertainment companies such as Live Nation Entertainment, Romeo Entertainment, AEG Presents, LLC, Tao Group, and Golden Voice. These relationships have been crucial to Plaintiffs' securing and managing numerous contractual agreements on behalf of their clients for live performances and promotional events, contributing to their overall business and economic success.

213. Defendants, at all relevant times, were aware of Plaintiffs' business and economic relationships with these third parties.

214. Defendants intentionally and maliciously engaged in conduct designed to interfere with Plaintiffs' economic relationships.

26

215.     Specifically, Defendants were aware that Plaintiffs negotiated and secured various performance dates for Nelly through Reliant.  Despite this knowledge, Defendants accepted these performance dates directly from Reliant, fully aware that they were initially offered and communicated to Plaintiffs.  The actions taken by the Defendants undoubtedly diverted business opportunities and revenue away from Plaintiffs.

216.     In addition, Defendants were aware that Plaintiffs were in negotiations and had received offers from Live Nation regarding musical tour performances for Nelly.

217.     Despite this knowledge, Defendants accepted the exact same tour offers at the same prices initially presented to Plaintiffs by Live Nation.  Defendants' actions not only undermined Plaintiffs' established relationships with Live Nation, but again deliberately diverted business opportunities and potential revenue away from Plaintiffs.

218.     In the same regard, Defendants were also aware of a global touring opportunity presented and offered by Plaintiffs relating to Nelly.  Defendants have engaged in negotiations regarding the same global touring deal that was initially offered to Plaintiffs, but at a lower rate. While the terms of the global touring deal are less favorable, Defendants' actions nonetheless interfered with Plaintiffs' economic advantage by again undermining arrangements initially garnered by Plaintiffs and damaging Plaintiffs ability to sustain their relationships in the future.

219.     Defendants were aware of Plaintiffs' longstanding relationship with TAO Group Hospitality ("**TAO Hospitality**"), an entertainment company with a large portfolio of restaurants, nightclubs, and lounges.

220.     Upon information and belief, Defendants directed the Director of Marketing at TAO Hospitality to ensure all new deals and negotiations regarding Nelly are conducted exclusively through Defendants rather than through Plaintiffs.

27

221.    Defendants were aware that Plaintiffs originally developed and established Nelly's relationship with TAO Hospitality, leading to numerous successful collaborations and significant business endeavors for Nelly.

222.    By directing TAO Hospitality to oust Plaintiffs and to deal directly with Defendants, Defendants again interfered with Plaintiffs' economic relationships, causing additional financial and reputational harm to them.

223.    Defendants' actions demonstrate a clear intent to usurp business and economic opportunities initially established by Plaintiffs on behalf of Nelly.

224.    As a direct and proximate result of Defendants' actions, Plaintiffs' relationships with Reliant, Live Nation, TAO Hospitality, and other third parties were disrupted, resulting in significant economic harm to Plaintiffs.

225.    Defendants exceeded the bounds of lawful competition and have wrongfully, and without justification, tortiously interfered with Plaintiffs' prospective economic relations.

226.    As a direct and proximate result of Defendants' actions, Plaintiffs have sustained, and continue to sustain, losses, and are entitled to recover damages exceeding $75,000 in an exact amount to be proven at trial.

**WHEREFORE**, Plaintiffs respectfully pray to the Court for the following relief:

1.    That Plaintiffs have and recover damages from Defendants in an amount to be proven at trial;

2.    That Plaintiffs be awarded treble damages, accrued interest, the costs of collection, additional costs and reasonable attorneys' fees to the extent allowed by law;

3.    That all triable issues of fact be heard before a jury; and

4.    That the Court award such other and further relief as it may deem just and proper.

This the 5th day of August, 2024.

_/s/ Dana C. Lumsden_

Dana C. Lumsden, Esq. [NC Bar No. 32497]
Anna E. Hamel, Esq. [NC Bar No. 60906]
**BRADLEY ARANT BOULT CUMMINGS LLP**
Truist Center, 214 North Tryon Street, Suite 3700
Charlotte, North Carolina 28202
Telephone: (704) 338-6000
Facsimile:  (704) 332-8858
dlumsden@bradley.com
ahamel@bradley.com
ATTORNEYS for the PLAINTIFFS
LESLIE KING II and
BUSIC ENTERTAINMENT, LLC

29