UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:24-cv-719-MOC-DCK

| | | |
|---|---|---|
| LESLIE KING II and BUSIC ENTERTAINMENT, LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | **ORDER** |
| MICHAEL CHAFFIN and THREE COMMAS, LLC, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**THIS MATTER** is before the Court on a Motion to Dismiss for Failure to State a Claim, filed by Defendants Michael Chaffin ("Chaffin") and Three Commas, LLC ("Three Commas") (collectively, "Defendants"). (Doc. No. 14). Plaintiffs Leslie King II ("King") and BUSIC Entertainment, LLC ("BUSIC") (collectively, "Plaintiffs") filed a response on November 4, 2024. (Doc. No. 17). Defendants filed a reply on November 12, 2024. (Doc. No. 19). This matter is now ripe for disposition.

I. **Background**

A. **Plaintiffs' Allegations**

This action arises out of acts occurring during and contributing to the dissolution of a business relationship between the parties. In assessing Defendants' motion to dismiss under FED. R. CIV. P. 12(b)(6), the Court presumes that the factual allegations in Plaintiffs' Amended Complaint, including those described below, are true.

1

Plaintiff King, by and through his company, Plaintiff BUSIC, began working for rapper Cornell Haynes, Jr. ("Nelly") in the early 2000s. King provided services, including securing endorsement deals, securing touring performances, and overseeing promotion and marketing. Throughout this time, Defendant Chaffin provided financial services to Nelly, in part through his job as a representative of Defendant Three Commas, LLC. Tensions grew between Defendants and Plaintiffs, resulting in Defendants attempting to interfere with Plaintiffs' and Nelly's relationship via negative statements about Plaintiffs. For example, Defendant Chaffin told Nelly that Plaintiff King had bragged about being the person who "kept the lights on" for Nelly, stated to third parties that Plaintiff King charged Nelly a higher commission than another employee, and accused Plaintiff King of improperly keeping commissions for himself and overcharging Nelly. Defendant Chaffin also allegedly told another employee Plaintiff King manipulated contracts and stole money from Nelly. These statements harmed Plaintiffs' relationship with Nelly and reputation in the music industry.

Defendants also allegedly interfered with Plaintiffs' contracts. Defendants removed Plaintiffs from contracts, telling the organizers of a music festival to direct payment elsewhere, and induced Nelly and another businessman to breach contracts with Plaintiffs. As a result, Plaintiffs have not received the proceeds they were entitled to under multiple contracts and have been prevented from entering new contracts.

### B. Procedural Background

On August 5, 2024, Plaintiffs filed a complaint in this Court. (Doc. No. 1). On October 6, 2024, Plaintiffs filed an Amended Complaint. (Doc. No. 10). The Amended Complaint asserts five causes of action: (1) defamation per se for various false, defamatory statements that impeached Plaintiffs in their trade and profession; (2) tortious interference with contracts

between Plaintiffs and various parties; (3) tortious interference with prospective economic advantage; (4) conversion; and (5) violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"). (Doc. No. 10). Defendants have moved to dismiss all claims in the Amended Complaint for failure to state a claim upon which relief can be granted.

## II. Legal Standard

Defendants have moved to dismiss under FED. R. CIV. P. 12(b)(6). Under FED. R. CIV. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A Rule 12(b)(6) motion tests the sufficiency of the complaint by asking whether the Plaintiff "has stated a cognizable claim." Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 452 (4th Cir. 2012). In reviewing a 12(b)(6) motion, the Court must accept as true all factual allegations in Plaintiff's complaint and draw all reasonable inferences therefrom in the light most favorable to Plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). That said, to survive Defendants' 12(b)(6) motion, Plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level," such that the complaint contains "enough facts to state a claim to relief that is plausible on its face." Id. at 570. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to survive a 12(b)(6) motion. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). Instead, a complaint survives only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations omitted).

## III. Discussion

### A. Defamation Per Se

3

Under North Carolina law, for a defamation claim to survive a motion to dismiss, a plaintiff must allege that the defendant caused injury to the plaintiff's reputation "by making false, defamatory statements of or concerning the plaintiff, which are published to a third person." Boyce & Isley v. Cooper, 153 N.C. App. 25, 29 (2002). "Defamation may be either spoken (slander) or written (libel) and may be actionable 'per se' or 'per quod.'" Collins v. AB Biodisk N. Am., Inc., No. 5:08-CV-355, 2009 WL 10705350, at *5 (E.D.N.C. Mar. 16, 2009). Defamation per se, alleged by Plaintiffs here, "involves charging a plaintiff with a crime of moral turpitude, impeaching her trade or business, or accusing her of having a loathsome disease." Id. In such cases, malice and special damages are presumed, and a plaintiff "need not show any further evidence of damages." Shaffer v. Gaither, 5:14-cv-106, 2015 WL 1249670, at *8 (W.D.N.C. Mar. 18, 2015).

i. **Particularity of Allegations**

Defendants first argue that allegations of defamation require more specificity than Plaintiffs provided. They cite Church Ekklasia Sozo Inc. v. CVS Health Corp., in which this Court explained that while "Plaintiffs are not required to set forth the allegedly defamatory statement in their Complaint verbatim, 'the words attributed to [Defendants] must be alleged 'substantially' in haec verba, or with sufficient particularity to enable the court to determine whether the statement was defamatory.'" No. 3:20-cv-382, 2022 WL 1572732, at *11 (W.D.N.C. Feb. 25, 2022). The Court further explained that the plaintiffs had to "identify the time and place of each alleged defamatory statement." Id. (citing Orndoff v. Raley, No. 3:17-cv-618, 2018 WL 5284040, at *3 (W.D.N.C. Oct. 24, 2018)). Defendants also cite Bowman v. Reid for the proposition that "[t]he complaint must set forth who said what to whom, as well as when and where the defamatory statements were made"—merely "referring to statements made by

4

'Defendants' to 'third parties'" is not sufficient. No. 5:14-cv-179, 2015 WL 4508648, at *7 (W.D.N.C. July 24, 2015). Thus, Defendants argue, Plaintiffs did not meet the pleading standard because they did not describe the alleged statements with sufficient particularity or identify the time, place, and recipient of the statements.

Plaintiffs, on the other hand, assert that Defendants are incorrectly relying on a heightened pleading standard for defamation. They believe the allegations in the Amended Complaint were made with sufficient particularity. Plaintiffs reference several cases that allowed defamation claims to proceed past the motion to dismiss stage despite what would seem to be insufficient detail according to Defendants' proposed standard. See Superior Performers, Inc. v. Ewing, No. 1:14-cv-232, 2015 WL 3823907 (M.D.N.C. June 19, 2015) (holding that allegations of defamation were sufficient even though they did not provide particular statements by each individual defendant where plaintiffs provided "defined categories of statements which provide reasonable notice to the parties as to the claims that Defendants are asserting against them" that "[were] not just conclusory statements"); Collins, 2009 WL 10705350, at *6 (finding that plaintiff adequately alleged defamation by stating that defendant made knowingly false statements about plaintiff to prospective employers, because the allegations put defendant "on notice of the crux of plaintiff's grievance and the facts he [would] be required to address during discovery").

The Court finds that Plaintiffs have stated a claim for defamation with sufficient particularity. The Court acknowledges that the courts in cases cited by the parties differ in how much detail they required to properly allege defamation claims.[1] Plaintiffs' allegations do not

---

[1] Plaintiffs argue that Defendants rely on a "misguided theory that defamation claims in federal courts are somehow subject to a heightened pleading standard." (Doc. No. 17, p. 8). It appears

specify the time, place, and recipient of each defamatory statement. However, first, the Court notes that at least some of the allegations in the Amended Complaint are described with the particularity Defendants believe to be required. (See, e.g., Doc. No. 10 ¶ 76) ("[I]n December 2023, Chaffin and Three Commas told Abby Cole, that King manipulated contracts and stole money from Nelly.").[2] Furthermore, the Court finds that, given the lenient standard of Twombly and Iqbal, Plaintiffs have provided sufficient detail to survive a motion to dismiss.

### ii. Whether Plaintiffs' Defamation Claims are Actionable Per Se

Next, Defendants argue that the alleged defamatory statements are not actionable per se and must be dismissed. In support they cite Stutts v. Duke Power Co., which states that even when an alleged statement is about someone's trade or profession, it is not actionable per se when it goes to the person's honesty. See 47 N.C. App. 76, 82 (1980) ("North Carolina cases have held consistently that alleged false statements made by defendants, calling plaintiff 'dishonest' or charging that the plaintiff was untruthful or an unreliable employee, are not actionable per se."); see also Pierce v. Atl. Grp., Inc., 219 N.C. App. 19, 35 (2012) (affirming Rule 12(b)(6) dismissal of per se claim based on statements that plaintiff falsified his timesheet); Taylor v. United States, No. 7:11-CV-268, 2012 WL 5928269, at *4 (E.D.N.C. Nov. 26, 2012) (dismissing defamation per se claim when defendant allegedly sent "thousands of letters to [plaintiff's] current and former patients falsely alleging that plaintiff had been overpaid" because even if those letters imputed dishonesty, "North Carolina courts have held that accusations of

---

that Defendants are not advocating for a heightened pleading standard but rather for a different interpretation of the Twombly and Iqbal pleading standard as applied to defamation cases.
[2] Defendants appear to concede that some of the statements are alleged with sufficient particularity. Thus, even if the Court found that some of the alleged statements were inadequately pled, the Court would not dismiss Count I.

6

dishonesty or untruthfulness are not actionable per se."). Defendants assert that this case also requires dismissal, since the claims relate to Plaintiffs' honesty.

The Court will not dismiss Plaintiffs' defamation claims on these grounds. While some of the alleged statements may implicate Plaintiffs' honesty, others impeach Plaintiffs in their trade or profession. For example, Plaintiffs allege that Defendants stated that Plaintiffs incorrectly placed dates on a touring calendar and double-booked Nelly, manipulated contracts, and stole money. (Doc. No. 10 ¶ 72–76). Unlike the cases cited by Defendants, these statements are not just stating or implying that Plaintiffs are dishonest; they implicate Plaintiffs' ability to perform work as music industry consultants. Therefore, the Court will not dismiss Plaintiffs' defamation claims at this stage on the grounds that they are not actionable per se.

### iii. Whether the Alleged Statements are Facially Defamatory

Defendants also argue that the alleged defamatory statements are not defamatory on their face. Statements are defamatory per se when, stripped of "innuendo, colloquium, or explanatory circumstances," they are "susceptible of but one meaning and of such a nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold him up to the public hatred, contempt or ridicule, or cause him to be shunned and avoided." MB Realty Grp., Inc. v. Gaston Cnty. Bd. of Educ., No. 317-cv-427, 2019 WL 2106081, at *2 (W.D.N.C. May 14, 2019). "In a business context, a statement that does not 'assert any illegal or wrongful activity' by the plaintiff, generally does not rise to the level of defamation recognized under North Carolina law." Diagnostic Devices, Inc. v. Doctor Diabetic Supply, Inc., 3:09-cv-135, 2010 WL 143094, at *2 (W.D.N.C. Jan. 11, 2010). Moreover, "to fall within the class of slander per se as concerns a person's trade or profession, the defamatory statement must do more than merely harm a person in [his] business… [it] must contain an imputation necessarily hurtful in its effect

7

on [his] business." Sirona Dental, Inc. v. Smithson, No. 3:14-cv-714, 2018 WL 1567370, at *3 (W.D.N.C. Mar. 30, 2018).

Defendants argue that the alleged statements are not defamatory because they do not meet the above standards. Defendants compare Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC, where a defamation claim was dismissed because Plaintiffs failed to allege an actionable defamatory statement. 976 F. Supp. 2d 706, 716 (M.D.N.C. 2013). According to Defendants, the allegations in Champion Pro are "extremely similar" to those made by Plaintiffs in this case. (Doc. No. 19, p. 3).

The Court finds that Plaintiffs have alleged statements that are defamatory on their face. Allegations that Plaintiffs manipulated contracts and stole money are necessarily hurtful to Plaintiffs business in the music industry and are defamatory on their face. Despite Defendants' contention of Champions Pro's factual similarity, the Court finds it distinguishable. In that case, the court found that statements made by one agent for an NFL player about another were not defamatory because, while they touched on the plaintiff's special trade or occupation as an agent, they were "personal opinions" and therefore not actionable. Champion Pro, 976 F. Supp. 2d at 715.[3] Here, Plaintiffs properly alleged statements that hurt them in their trade or occupation, are not personal opinions, and are therefore defamatory on their face.

In conclusion, the Court finds that Plaintiffs have stated a claim for defamation per se and Count I will not be dismissed.

### B. Tortious Interference with Contract

---

[3] The alleged defamatory statements in that case were that the plaintiff "should have been getting endorsement deals," that defendant could have done a better job than plaintiff, and that plaintiff was at fault for a player's low draft position. Champion Pro, 976 F. Supp. 2d at 715. The Court agrees that those statements are personal opinions and therefore would not be actionable. Here, Defendants do not argue that the alleged defamatory statements are personal opinions, and the Court does not believe they are.

8

Under North Carolina law, the elements of tortious interference with contract are: "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." Craft v. Tabor, No. 3:19-cv-469, 2021 WL 6618673, at *14 (W.D.N.C. Mar. 1, 2021). A "motion under Rule 12(b)(6) should be granted when the complaint reveals that the interference was justified or privileged." Champion Pro, 976 F. Supp. 2d at 717 (quoting Peoples Sec. Life Ins. Co. v. Hooks, 322 N.C. 216, 220 (1988)).

Whether an actor's conduct is justified depends on "the circumstances surrounding the interference, the actor's motive or conduct, the interests sought to be advanced, the social interest in protecting the freedom of action of the actor[,] and the contractual interests of the other party." Embree Const. Grp., Inc. v. Rafcor, Inc., 330 N.C. 487, 498 (1992). North Carolina courts presume that "non-outsiders" to a contract—"one who, though not a party to the terminated contract, had a legitimate business interest of his own in the subject matter"—are motivated by a legitimate business purpose and are therefore justified in any alleged interference. Button v. Level Four Orthotics & Prosthetics, Inc., 380 N.C. 459, 467–68 (2022). A plaintiff can overcome the presumption that a non-outsider's action was justified by showing that the non-outsider took the action for an improper reason. Benjamin v. Sparks, 173 F. Supp. 3d 272 (E.D.N.C. 2016), aff'd, 986 F.3d 332 (4th Cir. 2021). A motion to dismiss claims of tortious interference is properly granted only "where the complaint shows the interference was justified or privileged." Stec v. Fuzion Inv. Capital, LLC, No. 11-CVS-4241, 2012 WL 1524487, at *7 (N.C. Sup. Ct. Apr. 30, 2012); see also Champion Pro, 976 F. Supp. at 719 (granting dismissal for tortious

9

interference because the complaint <u>alleged on its face</u> that defendants had a legitimate business motive) (emphasis added).

Defendants argue that the claims should be dismissed because their conduct was justified by a legitimate interest. First, they suggest Defendants should be considered "non-outsiders" to the contracts because, as Plaintiffs admit, Defendant Chaffin was Nelly's business manager and was responsible for handling his finances. As non-outsiders, Defendants would be entitled to a presumption that they acted with a legitimate business interest. Second, they claim that even if Defendants are deemed "outsiders," they acted with a legitimate business purpose and therefore are not liable for tortious interference with contract. Finally, they argue that even if there was a malicious motive for inducing termination of the contracts, Defendants are not liable in light of the business justification for interference.

Plaintiffs argue that Defendants' conduct was not reasonably related to a legitimate business interest and therefore was not justified or privileged. They point to allegations in the Amended Complaint that Defendants contacted festival organizers and told them to direct payment under a contract to another entity, replaced Plaintiff BUSIC's name in various contracts, and implied that Plaintiffs were stealing from Nelly. (Doc. No. 10 ¶¶ 69, 82). These actions, Plaintiffs claim, were "taken solely to benefit themselves at the expense of Plaintiffs." According to the Amended Complaint, Defendants interfered with the contracts to increase their own compensation and damage Plaintiffs' relationship with Nelly and their reputation in the music industry. (<u>Id.</u> ¶ 46). Plaintiffs note that where there is a disputed claim of justification for interference with a contract, the issue of motive or intent is usually a fact question that should not be decided at the motion to dismiss stage. <u>See</u> <u>Movement Mortg. LLC, v. Summit Funding, Inc.</u>, Case No. 3:23-cv-633, 2024 WL 4481249, at *2 (W.D.N.C. Sept. 27, 2024).

The Court agrees with Plaintiffs and will not dismiss the claims for tortious interference with contract. Defendants' business motive is not clear from the face of the complaint. While business managers may be privileged to interfere with contracts when there is a legitimate business reason to do so, they do not have carte blanche to alter contracts regardless of the motivation or circumstances. "[T]he qualified privilege of a non-outsider is lost if exercised for motives other than reasonable, good faith attempts to protect the non-outsider's interests in the contract interfered with." Lenzer v. Flaherty, 106 N.C. App. 496, 513 (1992). Here, it is not clear from the Amended Complaint how the alleged actions—for example, changing the names in the contracts and redirecting payment under a contract—supported any business purpose.[4] Furthermore, Plaintiffs allege other possible motives for the interference. The Court finds that Plaintiffs have sufficiently raised the issue as to whether Defendants' motives were reasonable, good faith attempts to protect Defendants' and/or Nelly's business interests. See Barker v. Kimberly-Clark Corp., 136 N.C. App. 455, 463 (2000) (reversing a trial court's dismissal on summary judgment when the "forecast of the evidence sufficiently raise[d] the issue as to whether the motives of defendants … were reasonable, good faith attempts to protect their interests or the corporation's interests"); Lenzer, 106 N.C. App. at 513 (same).

The cases cited by Defendants do not persuade the Court otherwise. In Champion Pro, the complaint alleged that the defendants, who were part of a company representing professional football players as agents, were recruiting football players as potential clients even though they were under contract with other agents. Champion Pro, 976 F. Supp. at 718. Thus, the business justification for interference was clear on the face of the complaint—the defendants were

---

[4] Defendants insist that "resolving incorrect double-bookings (or any other contractual issues)" fall within the legitimate business purpose of a business manager. (Doc. No. 15, p. 18) (emphasis added). The Court does not believe "business purpose" sweeps so broadly.

11

attempting to poach a client from a competitor. See id. By contrast, here, there is no clear business reason for Defendants' alleged actions on the face of the Amended Complaint. Other cases cited by Defendants likewise do not dictate the result Defendants seek because they either (1) have the opposite result or (2) have clear business justifications. See, e.g., Robinson, Bradshaw & Hinson, P.A. v. Smith, 129 N.C. App. 305 (1998) (finding that summary judgment is inappropriate when issues such as motive or intent are material and more appropriate for a fact-finder) (emphasis added); Wells Fargo Ins. Servs. USA, Inc. v. Link, 372 N.C. 260 (2019) (involving recruitment of employees from a business competitor); Exela Pharma Scis., LLC v. Sandoz, Inc., 486 F. Supp. 3d 1001 (W.D.N.C. 2020) (involving an attempt to sell the same product as a competitor). Here, because the Court finds that there is a fact question as to whether Defendants' alleged contract interferences were reasonable, good faith efforts to protect their or Nelly's business interests, Counts III to XV will not be dismissed.

C. **Tortious Interference with Prospective Economic Advantage**

To state a claim for tortious interference under North Carolina law, a plaintiff must plausibly allege that (1) a prospective contract with a third party existed, (2) the tortfeasor "maliciously induc[ed]" the third party "not to enter a contract ... which he would have entered into but for the interference," and (3) the interference proximately caused damages. Benjamin, 173 F. Supp. 3d at 288 (citing Dalton v. Camp, 353 N.C. 647, 654 (2001)).

According to the Amended Complaint, Defendants interfered with Plaintiffs' economic advantage by (1) accepting performance dates for Nelly directly from third parties while aware that those offers were initially communicated to Plaintiffs, and (2) directing another third party, TAO Group Hospitality ("TAO"), to "ensure all new deals and negotiations regarding Nelly are conducted exclusively through Defendants." (Doc. No. 10 ¶¶ 216–30). Plaintiffs allege that these

12

actions "deliberately diverted business opportunities and potential revenue away from Plaintiffs," caused financial and reputational harm, and "exceeded the bounds of lawful competition." (Id.).

The Court finds that Plaintiffs failed to state a claim for tortious interference with prospective economic advantage. The first category of allegations does not involve tortious (or malicious) behavior. Merely accepting an offer that has also been offered to another party is run-of-the-mill business competition. As for the allegation that Defendants interfered by directing TAO to deal with them instead of Plaintiffs, "mere expectation of a continuing business relationship is insufficient to establish [] a claim" for tortious interference with business expectancy. Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC, 368 N.C. 693, 701 (2016). Plaintiffs do not identify a specific contract with TAO that would have resulted but for Defendants' alleged intervention. See Id. ("a plaintiff must produce evidence that a contract would have resulted but for a defendant's malicious intervention."). For these reasons, the Court will dismiss Count XVIII for failing to state a claim for tortious interference with prospective economic advantage.[5]

**D. Conversion**

"The tort of conversion is well defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC, 365 N.C. 520, 523 (2012). There are, in effect, two essential

---

[5] Plaintiffs cite a single case (with no elaboration as to how it supports their argument) for the proposition that their allegations are "sufficient to withstand a Rule 12(b)(6) inquiry." (Doc. No. 17, p. 15-16). However, that case does not involve a claim for tortious interference with prospective economic advantage but rather tortious interference with contract. Weaver, Bennett & Bland v. Speedy Bucks, Inc., 162 F. Supp. 2d 448 (W.D.N.C. 2001).

13

elements of a conversion claim: ownership in the plaintiff and wrongful possession or conversion by the defendant. Id.

The Court finds that Plaintiffs have failed to state a claim for conversion since they do not allege that <u>Defendants</u> converted the money under the contract. The Amended Complaint asserts that "Chaffin…contacted the festival organizers…and told them to direct payment <u>to another entity</u>." (Doc. No. 10 ¶ 81) (emphasis added).[6] There is no allegation that Defendants at any point received those funds, had ownership over them, or had authority to tell the festival organizers what to do with payment under a contract Defendants were not a party to. Because the Amended Complaint does not allege that Defendants wrongfully possessed or converted the payment under the contract, Plaintiffs have not stated a claim for conversion and Count XVI will be dismissed.[7]

### E. Unfair and Deceptive Trade Practices Act

Both parties agree that the UDTPA claims rise and fall with the underlying defamation and conversion claims, and Defendants do not make any additional arguments that these claims should be dismissed on other grounds. Because the Court will allow the defamation claim to proceed but dismiss the conversion claim, the Court will allow Count II, the UDTPA claim based on defamation, to proceed and dismiss Count XVII, the UDTPA claim based on conversion.

### IV. Conclusion

---

[6] Plaintiffs may be attempting to remedy the insufficiency of the Amended Complaint by stating in their briefing that "Plaintiffs have alleged that Defendants diverted funds away from them and to the Defendants." (Doc. No. 17, p. 16). However, in doing so, Plaintiffs misrepresent their own Amended Complaint.
[7] Because the conversion claims will be dismissed on these grounds, the Court need not reach the issue of whether the money has been sufficiently identified and described.

For the above reasons, the Court will grant Defendants' motion to dismiss Plaintiffs' claims for tortious interference with prospective economic advantage (Count XVIII), conversion (Count XVI), and violation of the UDTPA via conversion (Count XVII).

**ORDER**

**IT IS, THEREFORE, ORDERED,** that Defendants' motion to dismiss, (Doc. No. 14), is **GRANTED** in part and **DENIED** in part. Plaintiffs' claims for tortious interference with prospective economic advantage, conversion, and violation of the UDTPA via conversion are **DISMISSED** with prejudice. This action shall go forward on Plaintiffs' remaining claims against Defendants.

Signed: December 16, 2024

Max O. Cogburn Jr.
United States District Judge